# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

WALTER T. GODBEY, SR.,     )
    )
        Petitioner,     )     Civil Action No. 9:15-4233-JMC-BM
    )
v.     )
    )
Warden, F.C.I. WILLIAMSBURG,     )    **REPORT AND RECOMMENDATION**
    )
        Respondent.     )
_____)

        This action has been filed by the Petitioner, pro se, pursuant to 42 U.S.C. § 2241.

Petitioner, an inmate at the Federal Correctional Institution ("FCI") in Bennettsville, South Carolina[1],

was sentenced on September 23, 2002, to a thirty (30) year term of federal imprisonment by the

Superior Court for the District of Columbia for voluntary manslaughter while armed, in violation of

D.C. Code § 22-2105 and 22-4502.  See Respondent's Exhibit 2.  The sentencing court later reduced

Petitioner's sentence to twenty-two (22) years on September 16, 2008, and he currently has a

projected release date of February 23, 2021, via Good Conduct Time (GCT) Release.  Id.

        In this petition, Petitioner seeks to have his administrative disciplinary conviction for

Fighting [see Respondent's Exhibit 4] set aside, a restoration of good time that was disallowed as a

result of this disciplinary conviction, the removal of five points for violence (which increased his

_____

    [1]When this action was filed, Petitioner was incarcerated in FCI Williamsburg in Salters, South
Carolina.  See Court Docket No. 1-1, p. 18.

1



custody score), and to be transferred back to FCI Petersburg[2].  See Court Docket No. 1-1, p. 18.

Respondent filed a dismiss and/or motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P.,

on March 15, 2016.  As the Petitioner is proceeding pro se, a Roseboro order was entered by the

Court on March 17, 2016, advising Petitioner of the importance of a motion for summary judgment

and of the necessity for him to file an adequate response. Petitioner was specifically advised that if

he failed to respond adequately, the Respondent's motion may be granted, thereby ending his case.

Petitioner thereafter filed a memorandum in opposition to the Respondent's motion

on March 28, 2016, an affidavit on April 1, 2016, and a supplemental response in opposition on April

15, 2016.  This matter is now before the Court for disposition.[3]

### Background

The record before the Court shows that a Special Investigation Services (SIS)

investigation regarding the incident at issue was completed on March 26, 2014.  See Respondent's

Exhibits 3 and 4.  This investigation determined that on March 4, 2014, at approximately 5:30 P.M.,

Inmate Bernard Doherty and the Petitioner were involved in a physical altercation in the Education

Department.  See Respondent's Exhibits 3 and 4.  Doherty and the Petitioner were discussing an

earlier fight that had occurred between two other inmates, and during the discussion, Doherty struck

Petitioner in the face with his fist, knocking Petitioner to the ground.  Petitioner got back to his feet

and then he and Dorherty began striking each other with closed fists.  After the fight, the inmates

---

[2]Petitioner was incarcerated at FCI Petersburg when this incident occurred.  See Petition.

[3]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 19.02(B)(2)(c), D.S.C.  The Respondent has filed a motion to dismiss and/or for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



exited the Education Department.  <u>See</u> Respondent's Exhibits 3 and 4.  During the course of the investigation, Petitioner was interviewed by SIS and was quoted as saying "[w]hile we were talking Bernard [Doherty] hit me as I was looking away.  I then pushed him away and swung back to protect myself."  <u>See</u> Respondent's Exhibit 3.

After the investigation was completed by SIS, on March 26, 2014 both inmates received an incident report charging them with a violation of Disciplinary Code 201: Fighting with Another Person.  <u>See</u> Respondent's Exhibits 3 and 4.  The incident report gave a description of the incident and the prohibited act with which Petitioner was being charged.  <u>See</u> Respondent's Exhibit 4.  Petitioner was advised of his right to remain silent, but made a statement that he had only pushed Doherty off of him in self-defense, but denied punching him.  Petitioner did not request any witnesses at that time.  <u>See</u> Respondent's Exhibit 4.  At the conclusion of the investigation, Lt. Mendez found that Petitioner was "properly charged with the prohibited act(s) listed in Section 9 and 10 of this incident report.  This is based on [Petitioner's] statement he pushed Doherty.  In addition to several witness statements, they observed [Petitioner] get up off the floor and begin fighting with Doherty."  <u>See</u> Respondent's Exhibit 4.  Petitioner remained in SHU and the incident report was referred to the Unit Discipline Committee (UDC) for further disposition.  <u>See</u> Respondent's Exhibit 4.

A UDC hearing was then conducted on March 31, 2014.  The Petitioner was advised of his right to remain silent during the UDC hearing but that his silence - but not his silence alone - could be used to draw an adverse inference against him at any stage of the disciplinary process.  <u>Id.</u> at p. 2.  Petitioner stated "I never hit Doherty.  I only placed my hands in front of me for protection as he continued to punch me."  <u>Id.</u>  Based on the documented evidence, however, the UDC concluded that the charge was supported as written, and the UDC accordingly referred the charge to a



Disciplinary Hearing Officer ("DHO"). <u>Id</u>. On March 31, 2014, Petitioner was also given written notice of a hearing before the DHO as well as his rights at the DHO hearing. <u>See</u> Respondent's Exhibits 5 and 6.

      A hearing before the DHO was then conducted on April 11, 2014. <u>See</u> Court Docket No. 1-1, p. 28. The hearing report reflects that Petitioner was present and had been advised of his rights, and Petitioner stated that he understood his rights. <u>See</u> Court Docket No. 1-1, pp. 27-28. According to the report, Petitioner requested the assistance of a staff representative, indicated that he was requesting witnesses, and that he was ready to proceed. The Petitioner presented no evidence, but stated in his defense that the other inmate blind-sided him with a punch, then hit him again, and he spun around and fell to the ground. He did not say that he had hit Doherty. However, Petitioner's staff representative stated that Petitioner had told him that he [Petitioner] had pushed Doherty. <u>Id</u>. at p. 28.

      After considering all of the evidence, the DHO found based upon the greater weight of the evidence that Petitioner had committed the prohibited act as charged. The DHO then imposed a variety of sanctions for the offense, including disallowance of 27 days good conduct time, disciplinary segregation for 15 days, and 90 days loss of commissary privileges. <u>See</u> Court Docket No. 1-1, pp. 29-30. The DHO prepared a written report detailing the decision, the evidence relied upon, and the reasons for the sanctions imposed, and a copy of this written decision was delivered to the Petitioner on June 6, 2014. <u>Id</u>. Petitioner appealed this decision. <u>See</u> Respondent's Exhibit 7 (dated June 11, 2014). On July 1, 2014, the Disciplinary Hearing Administrator ("DHA") determined that Petitioner had requested a staff representative to assist him with the hearing, and that although a staff member was present, it appeared that the staff member present was at least partly



involved in the investigation of the incident. The DHA therefore determined that the inmate should be allowed to select a new staff representative, and that a correction needed to be made to section 13 of the incident report. See Respondent's Exhibit 8.

A rehearing before the DHO was conducted on August 11, 2014. See Respondent's Exhibits 9, 10, and 11. The hearing report reflects that Petitioner was present and again advised of his rights, and Petitioner stated that he understood his rights. See Respondent's Exhibits 9 and 10. According to the report, Petitioner requested the assistance of a staff representative, indicated that he was requesting witnesses, and that he had no documentary evidence to present.[4] See Respondent's Exhibit 11, p. 2.

After considering all of the evidence, the DHO again found based upon the greater weight of the evidence that Petitioner had committed the prohibited act as charged. The DHO then imposed a variety of sanctions for the offense, including disallowance of 27 days good conduct time, disciplinary segregation for 15 days, and 90 days loss of commissary privileges. See Respondent's Exhibit 11. The DHO prepared a written report detailing the decision, the evidence relied upon, and the reasons for the sanctions imposed, and a copy of this written decision was delivered to the Petitioner on August 28, 2014. Id. Petitioner appealed this decision. See Respondent's Exhibit 12. On September 17, 2014, the DHA determined that a rehearing was necessary, specifically finding that Petitioner requested the presentation/review of documentary evidence during the DHO hearing and that the DHO had declined to accept/consider this information. See Respondent's Exhibit 13. The DHA determined that the Petitioner should be allowed to present evidence and have it considered

---

[4]However, the DHA subsequently found that Petitioner had requested the DHO consider documentary evidence. See Respondent's Exhibit 13; see also discussion, infra.



by the DHO.  Id.

A second rehearing before the DHO was then conducted on November 5, 2014.  See Respondent's Exhibit 3.  The hearing report reflects that Petitioner was present and again advised of his rights, and Petitioner stated that he understood his rights.  According to the report, Petitioner requested the assistance of a staff representative, requested witnesses, and had documentary evidence to present.  Id.  Petitioner had a staff representative to assist him with the hearing.  See Respondent's Exhibit 3.  Petitioner denied the charge and stated that he did not go looking for Doherty.  See Respondent's Exhibit 3.  He further stated that he did not take a swing at Doherty, he had put his hands up in self-defense and pushed Doherty away, and that he could not see due to his injuries.  See Respondent's Exhibit 3.  Petitioner also provided a written statement containing nine objections to the incident report, an Affidavit in Support of Central Office Administrative Remedy Appeal, and a letter objecting to the venue of the rehearing.  See Respondent's Exhibit 3.  Two witnesses were called by the Petitioner and written statements from these two witnesses were provided.  See Respondent's Exhibit 3.

After considering all of the evidence, the DHO found based upon the greater weight of the evidence that Petitioner had committed the prohibited act as charged.  The DHO then imposed a variety of sanctions for the offense including disallowance of 27 days good conduct time, disciplinary segregation for 15 days, and loss of commissary privileges for 90 days.  See Respondent's Exhibit 3.  On November 14, 2014, the DHO prepared a written report detailing the decision, the evidence relied upon, and the reasons for the sanctions imposed, and a copy of this written decision was delivered to the Petitioner on November 18, 2014.  Id.  Petitioner appealed this decision. See Respondent's Exhibit 16 (dated November 24, 2014 with attachment dated December

6



12, 2014).  On January 13, 2015, the Regional Director denied Petitioner's appeal.  <u>See</u> Court Docket 1-1, p. 58.  Petitioner then filed an appeal to the Office of General Counsel dated January 30, 2015.  <u>See</u> Court Docket 1-1, pp. 59-60.  On May 18, 2015, the Administrative Remedy Coordinator acknowledged receipt of Petitioner's appeal and indicated that the response deadline had passed, but was being extended.  <u>See</u> Court Docket 1-1, pp. 67-68.  <u>See</u> Petition, p. 4.  In his Petition dated September 22, 2015, Petitioner indicates "failure to respond" as the result of his appeal to the Office of General Counsel.

<u>**Discussion**</u>

In his Petition, Petitioner raises the following nine grounds in support the expungement of the charge and conviction at issue:

**Issue One:** There was a lack of lawful notice by BOP of the Rules and Regulations that were to be enforced;

**Issue Two:**  There was no language in the sanctions that put Petitioner on notice that a Code 201 violation could incur an addition of five points for violence on his custody classification points;

**Issue Three:** The DHO improperly relied upon a correctional officer's unsworn statement over Plaintiff's sworn affidavit;

**Issue Four:** The BOP denied his right to self-defense in violation of the 9th Amendment;

**Issue Five:** The Code 201 violation is too vague and ambiguous to sustain a guilty finding;

**Issue Six:** BOP expunged a Code 201 violation against another inmate despite video evidence of the fight, and thus the failure to expunge his Code 201 is a violation of the Equal Protection Clause and the Deliberate Indifference Doctrine;

**Issue Seven:** The DHO was not an unbiased and independent fact finder;

**Issue Eight:** The venue of the rehearing was improper; and

7



**Issue Nine:** The DHO reports of August 19, 2014 and November 14, 2014 contain false and inaccurate information prejudicing the Petitioner and violating 18 U.S.C. Section 1001.

See Petition.

Respondent concedes that Petitioner has exhausted his administrative remedies, and that this Petition is properly before this Court. See McIntosh v. United States Parole Comm'n, 115 F.3d 809, 811 (10th Cir. 1997)[Prisoner may use § 2241 to challenge deprivation of good-time credits]; Hamm v. Saffle, 300 F.3d 1213, 1216 (10th Cir. 2002); Chua Han Mow v. United States, 730 F.2d 1308, 1313 (9th Cir. 1984). However, Respondent nonetheless contends that summary judgment should be entered on Petitioner's claims.

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56, Fed.R.Civ.P; see Habeas Corpus Rules 5-7, 11. Further, while the federal court is charged with liberally construing pleadings filed by a pro se litigant to allow the development of a potentially meritorious case; See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972); the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review of the material and arguments presented pursuant to these standards, the undersigned finds that Petitioner has failed to show entitlement to relief on his claims.

In a prison disciplinary setting, an inmate is entitled to only a minimal standard of due

8



process. If the following requirements are satisfied, prison officials have met this minimal standard.

1.  Advance written notice of the charges;

2.  A written statement by the committee, citing the evidence on which they relied and the reasons for the action taken; and

3.  The right by the inmate/defendant to call witnesses and present documentary evidence, if institutional safety will not be jeopardized.

Wolff v. McDonnell, 418 U.S. 539, 563-576 (1974); Luna v. Pico, 356 F.3d 481, 487-488 (2d Cir. 2004). Here, it is uncontested that Petitioner was given advance written notice of the charges, that he was provided with a UDC hearing on March 31, 2014, notice of the disciplinary hearing before the DHO, as well as with a copy of his inmate rights, including that he had the right to call witnesses and present evidence. See Respondent's Exhibits 4-6. After two DHO hearings[5], Petitioner's third and last DHO hearing on this charge was conducted on November 5, 2014, at which Petitioner was present, elected to have the assistance of a staff representative, and statements were obtained from his witnesses.[6] See Respondent's Exhibit 3.

At the DHO hearing, Petitioner denied the charge against him and stated that, "I did not go looking for I/M Doherty. I did not swing on him, I put my hands up in self-defense and pushed I/M Doherty away. I could not see due to my injuries." See Respondent's Exhibit 3. Petitioner also provided a written statement containing nine objections to the incident report, together with an affidavit and letter. Id. Petitioner further requested two witnesses, and those witnesses provided the

---

[5]As noted, Petitioner successfully appealed the DHO decisions from his first two DHO hearings. See Respondent's Exhibits 7-8, 11-13.

[6]Petitioner was again also given notice and advised of his rights and stated that he understood his rights. See Respondent's Exhibit 3.



following written statements:  Inmate George Diri stated in a written statement dated April 2, 2014, that "he had no information on any matter pertaining to [Plaintiff]."  Id.  Inmate Brandon Mroczko stated in a written statement dated October 16, 2014, that he "do not want to put no comment."  Id. The DHO also considered the facts presented in the written report of the reporting officer that on March 4, 2014, Petitioner and Doherty were in the Education Department discussing a fight that had occurred between two other inmates, when Doherty struck Petitioner in the face with a fist and knocked Petitioner to the ground.  The written report then states that Petitioner got back to his feet and he and Doherty began to strike each other, and that after the fight, Petitioner and Doherty exited the Education Department.  Id.

The DHO additionally relied on facts in the report from Petitioner's statement, which read "while we were talking, Bernard [Doherty] hit me as I was looking away.  I then pushed him away and swung back to protect myself."  The DHO compared this statement with Petitioner's statement at the hearing, where he did not say he had struck Doherty, and found that Petitioner had attempted to reduce his culpability.  The DHO also found that he considered Petitioner's objections but found them to be without merit.  Id.   After considering all of the evidence, the DHO found that Petitioner had committed the prohibited act as charged and imposed a variety of sanctions, including disallowance of good conduct time, disciplinary segregation, and commissary privileges.  Id.  The DHO also prepared a written report detailing the decision, the evidence relied upon and the reasons for the sanctions imposed, and a copy of this written decision was delivered to the Petitioner on November 18, 2014.  Id.

## I.

In Issue One of his Petition, Petitioner contends that he lacked notice from the BOP



of the rules and regulations they wished to enforce.  <u>See</u> Complaint, pp. 6-7.  Petitioner contends that

he was out of Respondent's custody (apparently in state custody on a writ**)** for about 8 months from

November 2009 to June, 2010 and did not receive notice of rules changes that occurred while he was

gone and also that he did not receive a handbook when he entered FCI Petersburg in June/July 2010.

<u>See</u> Petitioner's Affidavit filed April 1, 2016, p. 1.  Petitioner further contends that the Sanctions and

Code Offenses changed in 2011, and that he was entitled to notice of theses changes at that time.  <u>See</u>

Petitioner's Response in Opposition to Summary Judgment filed on March 28, 2016, p. 2.  The

Respondent counters that Petitioner has been incarcerated since February 2002,[7] that he received

notice of the offense codes at that time, and that in any event the *Fighting with Another Person* Code

201 violation has been a prohibited  act in *all* BOP institutions throughout Petitioner's period of

incarceration.   <u>See</u> Respondent's Exhibit 3, p. 2; Respondent's Exhibit 17 [Inmate Discipline

Program], p. 46.

Further, even assuming arguendo that Petitioner did not receive notice of the

regulation at issue through the issuance of a handbook, Petitioner had public notice of the Rule 201

because it was published in the Code of Federal Regulations at 28 C.F.R. § 541.3.  <u>See</u> <u>Pettaway v.</u>

<u>Fox</u>, No. 15-545, 2016 WL 922437 at * 3 (C.D.Ca. Feb. 3, 2016)[finding federal inmate had public

notice of the prison rule because it was published in the CFR], <u>adopted</u>, 2016 WL 927131 (C.D.Ca.

Mar. 8, 2016); <u>United States v. Amen</u>, 831 F.2d 373, 379 (2d Cir. 1987)[CFR provided federal

inmates with public notice of prison rules]; <u>United States v. Sababu</u>, 891 F.2d 1308, 1329 (7th Cir.

---

[7]Petitioner argues that Respondent has conceded that its statement that he had been in BOP custody since 2002 was a scrivener's error, and that he was actually not taken into BOP custody until April/May 2005.  <u>See</u> Petitioner's Response in Opposition to Summary Judgment filed on March 28, 2016, p. 8.



1989)[CFR provided members of the public notice of federal prison's rules]. Accordingly, Issue One is without merit.

## II.

With regard to Petitioner's Second Issue, Petitioner contends that the 5 points added to his security code are a direct result of the DHO Report and that no notice was ever given to him that this would be a result of a conviction. <u>See</u> Petitioner's Response in Opposition to Summary Judgment filed on March 28, 2016, pp. 2-3. Petitioner further attests in his affidavit that this 5 point addition is causing him to be housed in a medium security prison (verses a lower level one). <u>See</u> Petitioner's Affidavit filed on April 1, 2016, pp. 2-3.

In response to Petitioner's argument, the Respondent points out that the Inmate Disciplinary Program does not use custody level adjustments as sanctions for disciplinary convictions. <u>See</u> Respondent's Exhibit 17, pp. 6, 9-16. Respondent also argues that this issue is not even a cognizable claim under 28 U.S.C. § 2241, and the undersigned agrees. Although § 2241 may be an appropriate vehicle to challenge a "quantum change in level of custody", such as from a BOP facility to a halfway house, Petitioner here is not challenging such a custody change. <u>See</u> <u>Gosier v. Mitchell</u>, No. 09-931, 2010 WL 619175 at **3-4 (D.S.C. Feb. 18, 2010)[change of custody from BOP facility to halfway house would amount to a quantum change in level of custody]; <u>Brown v. LaManna</u>, 08-1918, 2008 WL 5062180 at * 3 (D.S.C. Nov. 19, 2008)[Since issue of community confinement was not at issue, the length or term of petitioner's sentence would not change, and court therefore did not have jurisdiction under § 2241].

While there are a few cases where custody classification issues have been addressed



in § 2241 actions, the more appropriate procedure for asserting such a claim is through a <u>Bivens</u>[8]

action, *after* exhaustion by the Petitioner of his administrative remedies with respect to such a claim.

<u>Banks v. Warden of the Federal Transfer Center</u>, No. 11-201, 2012 WL 728370 at *2 (W.D.Okla.

Feb. 15, 2012)[Where prisoner requested that he be reclassified and the management variable be

removed, the court found that his challenge to his custody classification did not impact the fact or

duration of confinement and was not cognizable under § 2241], *adopted by*, 2012 WL 728321

(W.D.Okla. Mar. 5, 2012); <u>Duran v. Medina</u>, No. 12-476, 2012 WL 5994676 at * 3 n. 2 (W.D.La.

Sept. 19, 2012)[Finding that Petitioner's "claim as to the change in his security classification and his

transfer to a higher security prison do not state a claim for the violation of a constitutional right

cognizable under Section 2241"], *adopted by*, 2012 WL 5994495 (W.D.La. Nov. 30, 2012).

Pursuant to the exhaustion requirement, Petitioner would be required to show that a

classification decision was arbitrary and capricious (a high burden), with the BOP being first allowed

to address (and possibly remedy) this issue administratively prior to a case being brought in this

Court. <u>See</u> <u>Grier v. Mitchell</u>, No. 11-42, 2011 WL 5517242 at * 1(D.S.C. Nov. 1, 2011)["[P]ursuant

to [42 U.S.C.] § 1997e(a), the exhaustion requirement is applicable to Bivens claims."](citing <u>Steele</u>

<u>v. Fed. Bureau of Prisons</u>, 355 F.3d 1204, 1214 (10th Cir. 2003), <u>abrogated on other grounds by</u>,

---

[8]In <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), the Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights. A <u>Bivens</u> claim is analogous to a claim under 42 U.S.C. § 1983. While federal officials cannot be sued under 42 U.S.C. § 1983 because they do not act under color of *state* law; <u>see</u> <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 814-820 (1982); the case law involving § 1983 claims is applicable in <u>Bivens</u> actions and *vice versa*. <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994). <u>See also</u> <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 530 (1985); <u>Turner v. Dammon</u>, 848 F.2d 440, 443-444 (4th Cir. 1988); <u>Osabutey v. Welch</u>, 857 F.2d 220, 221-223 (4th Cir. 1988); and <u>Tarantino v. Baker</u>, 825 F.2d 772, 773-775 (4th Cir. 1987), <u>cert. denied</u>, <u>North Carolina v. Tarantino</u>, 489 U.S. 1010 (1989).



Jones v. Bock, 549 U.S. 199 (2007)); cf. Toolasprashad v. Schult, No. 10-1289, 2011 WL 5975063 at *3 (N.D.N.Y. Nov. 29, 2011)["[E]ven if this case was not moot, no relief would issue because "[t]he BOP is the sole agency charged with discretion to place a convicted defendant within a particular treatment program or a particular facility."](quoting Levine v. Apker, 455 F.3d 71, 83 (2d Cir. 2006)); White v. Berkbile, No. 11-48, 2011WL 1868973 at * 5 (E.D.Ky. May 16, 2011)["[R]egardless of whether [the prisoner] files a *Bivens* civil rights action or a § 2241 petition, it is well-settled that prison classifications, assignments, and transfers are functions wholly within the discretion of the BOP."](citing Olim v. Wakenekona, 461 U.S. 238, 245 (1983).

Accordingly, Issue Two is not a cognizable claim in this § 2241 action, and should be dismissed.[9]

### III.

In Petitioner's Third Issue, he challenges the method and manner in which the evidence at his hearing was considered, which (Petitioner contends) included the consideration of unsubstantiated confidential informant's statements in the second hearing and unsworn statements in the third hearing. Petitioner also challenges the finding of the BOP staff's truthfulness solely because they are BOP staff with no alleged reason to lie. See Petitioner's Response in Opposition to Summary Judgment filed on March 28, 2016, p. 3.

However, while the DHO considered the facts presented in the written report of the reporting officer which included that Petitioner struck Doherty after being knocked to the ground, the DHO additionally relied on facts in the report of Petitioner's own statement, which read "while we

---

[9]To preserve Petitioner's ability to possibly *properly* contest this issue, this dismissal should be without prejudice.



were talking, Bernard [Doherty] hit me as I was looking away.  I then pushed him away and swung back to protect myself."  The DHO compared this statement with Petitioner's statement at the hearing, and found that Petitioner was attempting to reduce his culpability.  The DHO also found that he considered Petitioner's objections but found them to be without merit.  Hence, the DHO relied on an officer's statement who had first hand knowledge of what Petitioner told him and the conflict between Petitioner's statements in reaching his decision.

There is nothing in this case history which shows a violation of Wolff and its progeny, as the evidence before the Court reflects that Petitioner was provided with the minimal standard of due process.  See discussion, supra.  He simply disagrees with the DHO's decision.  See also Wolff, 418 U.S. at 563-576; Luna, 356 F.3d at 487-488 [noting that due process requirements are satisfied where a prisoner is given advance written notice of the charges, the right to participate in a fair and impartial hearing and call witnesses, and provided with a written statement setting out the decision and the reasons therefore]; see Superintendent, Massachusetts Correctional Institution v. Hill, 472 U.S. 445, 455-457 (1985) [Due process satisfied in prison disciplinary setting if there is "some evidence" to support the DHO's decision].  Therefore, Issue Three is without merit and should be dismissed.  See discussion, supra and infra.

## IV.

In his Fourth Issue, Petitioner contends that his conviction should be overturned because he had a right to defend himself.  See Petitioner's Response in Opposition to Summary Judgment filed on March 28, 2016, pp. 3-4.  However, in making this argument, Petitioner finds himself in a similar position to the Plaintiff in Regan v. Fox, No. 14-9658, 2015 WL 10793465(C.D.Cal. Aug. 28, 2015), adopted by, 2015 Wl 10793709 (C.D. Oct. 8, 2015), where the



Court found:

> The record shows that Petitioner asserted a self-defense claim at the disciplinary hearing, and that claim was noted and rejected during the disciplinary process. Because there was "some evidence" that Petitioner was actively fighting, and not merely acting in self-defense, these "constitutional" questions are moot. Cf. <u>Meinhold v. United States Dep't of Def.</u>, 34 F.3d 1469, 1474 (9th Cir.1994) ("Prior to reaching any constitutional questions, federal courts must consider non-constitutional grounds for decision.") (quoting <u>Jean v. Nelson</u>, 472 U.S. 846, 854, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985)).

<u>Regan</u>, 2015 WL 10793465 at * 6 n. 2.

In this case, Petitioner also asserted a self-defense claim at his disciplinary hearing, his claim was noted, and it was rejected both during his disciplinary proceedings and his appeal. As previously discussed, there was "some evidence" that Petitioner was fighting, which is all that was required under Wolff. <u>See</u> discussion (Issue Three), <u>supra</u>. <u>See</u> also <u>Scruggs v. Jordan</u>, 485 F.3d 934, 938-939 (7th Cir. 2007) [Noting that inmates do not have a right of self-defense to excuse fighting in prison context]. Therefore, Petitioner's Fourth Issue is without merit.

## V.

In Issue Five, Petitioner contends that the offense of *Fighting with Another Person* in violation of Code 201 is too vague and ambiguous to sustain a guilty finding, and therefore argues that he was not properly on notice as to what constituted "fighting." <u>See</u> Petitioner's Response in Opposition to Summary Judgment filed on March 28, 2016, p. 4. In support of this claim, Petitioner attests in his affidavit that he does not understand what Code 201 specifically prohibits. <u>See</u> Petitioner's Affidavit filed on April 1, 2016, p. 4.

A statute is unconstitutionally vague if it either (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or (2) "authorizes or



even encourages arbitrary and discriminatory enforcement." <u>United States v. Whorley</u>, 550 F.3d 326, 333 (4th Cir. 2008)(internal citations omitted).  To pass constitutional muster, however, statutory prohibitions must simply "set out [such prohibitions] in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with."  <u>Id</u>.  Further, "[i]t has been recognized in the United States Court of Appeals, Fourth Circuit, that in a "vagueness" claim involving prison discipline, deference to the legitimate needs of the prison facility should be given." <u>Larue v. Rubenstein</u>, No. 09-395, 2009 WL 5217680 at * 5 (S.D.W.Va. Dec. 31, 2009)(citing <u>Gaston v. Taylor</u>, 918 F.2d 25, 29 (4th Cir. 1990)).

　　　　As Respondent correctly points out, an ordinary person exercising ordinary common sense can sufficiently understand what fighting with another person entails.  Petitioner cannot plausibly claim that he lacked "fair notice' of what fighting with another person entailed. <u>Cf</u>. <u>Adams v. Gunnell</u>, 729 F.3d 362, 369 (5th Cir. 1984) [Courts defer to interpretation of rules by prison officials unless "fair notice" to a prisoner of the meaning of the rule was "clearly lacking"]. Therefore, Issue Five is without merit and should be dismissed.[10]

## VI.

　　　　In his Sixth Issue, Petitioner contends that he was treated differently from another inmate, Michmalski, who had his conviction for fighting expunged.  <u>See</u> Petitioner's Response in Opposition to Summary Judgment filed on March 28, 2016, p. 4.  "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful

---

[10]To the extent that Petitioner is arguing that the vagueness results from some sort of right to self-defense, the Court's analysis of Issue Four also applies to Issue Five.  <u>See</u> discussion [Issue Four), <u>supra</u>.



discrimination." <u>Morrison v. Garraghty</u>, 239 F.3d 648, 654 (4th Cir. 2001). Further, "[f]ederal courts have long recognized the need for deference to prison officials' discretionary application of internal regulations in matters involving discipline and safety, and have determined that occasional failure to apply a prison rule or regulation exactly the same way to all inmates does not violate the United States Constitution." <u>Lisenby v. Riley</u>, No. 15-162, 2015 WL 1346777 at * 5 (D.S.C. Mar. 23, 2015)(Citing <u>Washington v. United States</u>k 401 F.2d 915, 925 (1968)[lax enforcement of a policy is not sufficient to establish discriminatory purpose]).

In this case, Petitioner has not shown that he was similarly situated to Michmalski. Petitioner concedes in his argument that, in that other case, there was a video of the altercation and eye witnesses, which showed Michmalski was not guilty of fighting and was the reason Inmate Michmalski's charge was expunged. <u>See</u> Petitioner's Response in Opposition to Summary Judgment filed on March 28, 2016, pp. 4-5. The video recording and an eye witness statement apparently persuaded the prison officials to expunge the conviction in that case. Here, however, there was no video evidence and no eye witness testimony or statement that supported Petitioner's claim that he did not hit Doherty. Conversely, there was evidence offered, including statements from the Petitioner, to show that he swung at and/or pushed Doherty. <u>See</u> discussion, <u>supra</u>. Therefore, Petitioner has not shown that he was similarly situated in all regards with this other inmate or that he was denied equal protection on that basis. Petitioner's Issue Six is without merit and should be dismissed.

**VII.**

In his Seventh Issue, Petitioner contends that since the DHO initially disallowed his evidence and witnesses to be considered, the DHO should not have been trusted in a subsequent

18



proceeding to render a fair verdict. <u>See</u> Petitioner's Response in Opposition to Summary Judgment filed on March 28, 2016, p. 5. Petitioner also argues that the scrivener's error referred to by the Respondent concerning the finding after the second hearing that Petitioner had no evidence to present, was not a scrivener's error and showed the DHO's bias and unfairness. <u>See</u> Petitioner's Response in Opposition to Summary Judgment filed on March 28, 2016, p. 6. Therefore, Petitioner contends that a different DHO should have presided over the third hearing, entitling him to a reversal of the conviction. <u>Id</u>.

An inmate facing disciplinary charges has the right to an impartial decisionmaker. <u>Wolff</u>, 418 U.S. at 571. However, "[h]onesty and integrity are presumed on the part of the tribunal, [and] there must be some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated." <u>Whitmore v. Parker</u>, 484 Fed.Appx. 227, 237-238 (10th Cir. 2012)(quoting <u>Gwinn v. Awmiller</u>, 354 F.3d 1211, 1220 (10th Cir. 2014)). Additionally, a hearing officer is not automatically disqualified simply because he adjudicated or was involved in a previous disciplinary charge against that inmate. <u>See</u> <u>Piggie v. Cotton</u>, 342 F.3d 660, 666-667 (7th Cir. 2003).

Here, Petitioner has made no showing that the hearing officer was involved in the underlying incident. Rather, he simply argues that because the officer made mistakes in his initial hearings, that serves as evidence of his bias. However, this conclusory contention does not, by itself, establish a factual basis on which to overcome the presumption of the hearing officer's honesty and integrity. <u>Whitmore</u>, 484 Fed.Appx. at 237-238; <u>Gwinn</u>, 354 F.3d at 1220. Therefore, Issue Seven is without merit and should be dismissed.



## VIII.

In his Eighth Issue, Petitioner contends that he was prejudiced by not having the rehearing at the same institution, and that he should have been returned to that institution for his hearing. <u>See</u> Petitioner's Response in Opposition to Summary Judgment filed on March 28, 2016, p. 6. However, "the Regulations do not require that a DHO hearing be conducted in the same institution that issued the incident report". *See* 28 C.F.R. Part 541." <u>Head v. Purdue</u>, No. 14-144, 2015 WL 4429217 at * 8 (N.D.W.V. July 20, 2015). Therefore, Petitioner has not shown that he is entitled to relief on Issue Eight.

## IX.

In his final Issue Nine, Petitioner contends that what Respondent refers to as scrivener's errors prejudiced him. <u>See</u> Petitioner's Response in Opposition to Summary Judgment filed on March 28, 2016, p. 7.

Specifically, Petitioner initially contends that Respondent wrongly states that he had been in BOP custody since February 2002, when he was actually in D.C. in custody at that time and therefore could not have been aware of the BOP rules at issue. <u>See</u> Petitioner's Response in Opposition to Summary Judgment filed on March 28, 2016, p. 7. Petitioner argues that he did not come into BOP custody until April/May 2005. <u>See</u> Petitioner's Response in Opposition to Summary Judgment filed on March 28, 2016, p. 8. However, with regard to Petitioner's allegations concerning his awareness of the applicable BOP rule, that issue has already been addressed and found without merit. <u>See</u> discussion (Issue One), <u>supra</u>.

Petitioner also contends that the DHO did not make a finding as to the credibility of a confidential informant, and that the DHO also made findings based on an officer's statements who



did not observe the altercation.  See Petitioner's Response in Opposition to Summary Judgment filed on March 28, 2016, pp. 8-9.  Petitioner contends that the hearing officer wrongly relied on the officer's statements as to what the Petitioner told him.  See Petitioner's Response in Opposition to Summary Judgment filed on March 28, 2016, p. 9.  However, this issue has also already been addressed and found to be without merit.  See discussion (Issue Three), supra.

Therefore, since Petitioner has not shown that he is entitled to relief based on his allegations in issue nine, this issue should also be dismissed.

## Conclusion

In an institutional setting, the fact-finder need only show that some evidence existed to support the decision. Superintendent, Massachusetts Correction Institution, 472 U.S. at 456-457; see Piggie, 344 F.3d at 677.  The Supreme Court in Superintendent evidenced a distaste for allowing federal courts to review the outcome of prison disciplinary actions, with the "some" evidence standard for a disciplinary decision being sufficient to pass scrutiny under the due process clause. Easter v. Saffle, 51 Fed.Appx. 286, 289 (10th Cir. 2002); Allen v. Puckett, 5 F.3d 1151, 1153 (8th Cir. 1993); Koenig v. Vannelli, 971 F.2d 422, 423 (9th Cir. 1992); Peranzo Coughlin, 850 F.2d 125, 126 (2nd Cir. 1988).  The evidence presented in this case shows compliance with this standard. Petitioner was not denied a right to an inmate representative or to present witnesses, he had a full hearing, and was even successful in pursuing two appeals.  Petitioner's claim is without merit.

Therefore, based on the foregoing, it is recommended that the Respondent's motion for summary judgment be **granted**, and that the Petition be **dismissed**.[11]

---

[11]As previously discussed, Petitioner's second issue should be dismissed without prejudice.



The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

September 23, 2016
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

